# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

KUNBI ALABI-SHONDE, as natural guardian of  :
O.S., a Minor, and L.S., a Minor,             :
                                           :
        Plaintiffs,               :
                                           :
      v.                      :     Civ. No. 11-608-LPS
                                           :
MATTHEW PATTERSON, Individually and in his :
official capacity of Security Guard, DAVID    :
JIMINEZ, Individually and in his Official capacity  :
of Security Guard IPC INTERNATIONAL       :
CORPORATION, GENERAL GROWTH          :
PROPERTIES, INC., CHRISTIANA MALL      :
HOLDINGS, LLC, CHRISTIANA MALL, LLC,   :
Cpl. Amber Smith, in her individual capacity as an  :
officer of the DELAWARE STATE POLICE, and   :
corp. Raymond Shatley, in his individual capacity  :
as an officer of the DELAWARE STATE POLICE, :
                                           :
        Defendants.            :

Stephen Price Norman, Esq. and Daniel C. Herr, Esq., of THE NORMAN LAW FIRM, Wilmington, DE.

      Attorneys for Plaintiffs.

William A. Crawford,, Esq., of Franklin & Prokopik, Wilmington, DE.

      Attorneys for Defendants David Jiminez, Matthew Patterson, IPC International
      Corporation, General Growth Properties, Inc., Christiana Mall Holding, LLC and
      Christiana Mall, LLC.

Michael F. McTaggart, Esq., of the State of Delaware Department of Justice, Wilmington, DE.

      Attorney for Defendants Cpl. Amber Smith and Cpl. Raymond Shatley.

---

## MEMORANDUM OPINION

February 6, 2014
Wilmington, Delaware

STARK, U.S. District Judge:

Plaintiff Kunbi Alabi-Shonde, as mother and natural guardian of minor plaintiffs O.S. and

I.S. (collectively, "Plaintiffs"), filed this action against several defendants, alleging violations of

42 U.S.C. § 1983 ("Section 1983") and various state tort laws.[1]  The Court has original subject

matter jurisdiction pursuant to 28 U.S.C. § 1331 over Plaintiffs' claims under 42 U.S.C. § 1983,

and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

Presently before the Court are two defense motions for summary judgment: (i) the Motion

for Summary Judgment filed by the State Defendants Shatley and Smith (the "Shatley/Smith

Motion") (D.I. 95); and (ii) the Motion for Partial Summary Judgment on Counts I and IV of the

Complaint, filed by Mall Defendants Patterson and Jiminez (the "Patterson/Jiminez Motion")

(D.I. 98), both of which are opposed by Plaintiffs.  For the reasons set forth below, the Court will

grant both motions.

## I.  PROCEDURAL BACKGROUND

The Complaint asserts two causes of action against the State Defendants Shatley and

Smith: (i) Unlawful Detention, in violation of 42 U.S.C. § 1983 (Count I), against both State

Defendants; and (ii) Excessive Force, in violation of 42 U.S.C. § 1983 (Count II), against

defendant Shatley.  Plaintiffs also assert claims against Mall Defendants Patterson and Jiminez:

(i) Unlawful Detention, in violation of 42 U.S.C.§ 1983 (Count I), against both Mall Defendants;

---

[1]Plaintiffs commenced this civil action on July 8, 2011 against the following defendants: Delaware State Police Corporal Amber Smith ("Smith") and Delaware State Police Corporal Raymond Shatley ("Shatley") (collectively, the "State Defendants"); Sergeant Matthew Patterson ("Patterson") and Corporal David Jiminez ("Jiminez") (collectively, the "Mall Defendants"); IPC International Corporation ("IPC"); General Growth Properties, Inc. ("GGP"); Christiana Mall Holding, LLC ("CMH"); and Christiana Mall LLC ("CM").  (D.I. 1)  After twice amending their complaint (D.I. 13; D.I. 14), Plaintiffs filed a Third Amended Complaint (the "Complaint") on February 13, 2012 (D.I. 35).  On March 1 and March 9, 2012, respectively, the State Defendants and the Mall Defendants answered the Complaint.  (D.I. 42; D.I. 44)

and (ii) False Imprisonment (Count IV), also against both Mall Defendants.

Following discovery, the State Defendants and Mall Defendants moved for summary judgment. (D.I. 95; D.I. 98)  The Court heard oral argument on the motions on June 19, 2013. (*See* Transcript of June 19, 2013 hearing ("Tr."))

## II.   **FACTUAL BACKGROUND**[2]

Plaintiffs' claims arise from a series of incidents at the Christiana Mall ("the Mall") on December 15 and 16, 2010.  Plaintiffs allege in their Complaint that minors I.S. and O.S., respectively a fifteen and thirteen year-old African American male, were wrongfully stopped, handcuffed, and detained by Patterson and Jiminez, public safety officers with IPC, while on Mall premises at approximately 6:30 a.m. on December 16, 2010. (*See, e.g.*, D.I. 35 at ¶¶ 16, 18-20, Counts I & IV)  Plaintiffs further allege that I.S. and O.S. were then wrongfully handcuffed and transported from the Mall to the police station by Delaware State Police officers, where they were further detained and unlawfully and forcibly restrained. (*See, e.g., id.* at ¶¶ 33, 35, Counts I & II)

The Mall usually opens between 7:00 a.m. and 8:00 a.m. (Patterson Depo. at 32, A-82) People are allowed into the Mall to exercise during the hours before the Mall stores open. (Patterson Depo. at 33-34, A-83)  Individuals riding a bus, which stops at the Mall, are not permitted to come into the Mall. (Jiminez Depo. at 84, A-117)  When people are allowed in to exercise or "walk the mall," there are signs at each door prohibiting conduct or "[a]ny activity that would be inconsistent with the general purpose of the mall." (Patterson Depo. at 32-35, A-

---

[2]This factual background is derived primarily from that provided by the State Defendants (*see* D.I. 96 at 2-6), which is largely consistent on all material points with the background provided by the other parties (*see, e.g.,* D.I. 99 at 2-7; D.I. 101 at 3-9).

83)

On November 4, 2010, a cell phone was stolen from the AT&T kiosk in the Mall. (Patterson Depo. at 42-43, A-85) The theft occurred prior to the Mall's opening. (Patterson Depo. at 41, A-85) Mall video of the incident showed a young black male moving around the kiosk, reaching inside, and then hiding from a patrol officer before fleeing the property. (Patterson Depo. at 40-45, A-85)

On December 15, 2010, Patterson learned that a cell phone had been stolen from a customer in the Mall. (Patterson Depo. at 45, A-86) A review of surveillance footage revealed three young males inside the Mall between 6:00 and 7:00 a.m. (Patterson Depo. at 47, A-86) The youths were observed lifting up tarps on kiosks, taking sugar packets from behind counters, and moving the covers over kiosks. (Patterson Depo. at 47, A-86)

Also on December 15, 2010, Smith responded to a theft complaint at the Mall. (Smith Depo. at 24, A-6) Smith made contact with Mall security personnel, who escorted her to the victim, who was in the food court area of the Mall. (Smith Depo. at 27, A-7) The victim reported that, upon her return from a walk in the Mall, she reached into her pocket and noticed that her cell phone and a pair of black gloves were missing. (Smith Depo. at 29, A-8) After speaking to the victim, Smith contacted Mall security and viewed the surveillance tape from earlier that morning; the tape showed a male walking in between tables in the food court and reaching into a jacket pocket that was hanging over the back of a chair. (Smith Depo. at 30-31, A-8)

On December 16, 2010, Patterson and Jiminez saw the three boys from the previous day again arrive together at the Mall. (Patterson Depo. at 51, A-87) They watched the three boys

walk together from the "park and ride" into the Mall – "joking, talking with each other [and] pushing." (Patterson Depo. at 51, A-87) Patterson and Jiminez went into the Mall to speak with the boys about having allegedly violated the Mall Code of Conduct the previous day by stealing sugar packets. (Patterson Depo. at 53, A-88) Patterson and Jiminez observed two boys, later identified as O.S. and I.S., separate once they were in the Mall. (Patterson Depo. at 53, A-88) One boy appeared to be acting as a lookout for the other, as he seemed to be paying a lot of attention to the hallways and seemed to have no other reason for where he was stationed. (Patterson Depo. at 53-54, A-88) Upon seeing Mall Security, the two boys began to walk away. (Patterson Depo. at 55, A-88) The boys were detained by Mall Security and taken back to the Mall Security office. (Patterson Depo. at 59, 64, A-89-90)

While walking to the Mall Security office, one of the boys, either O.S. or I.S., volunteered, "I don't know anything about any stolen cell phones." (Patterson Depo. at 60-61, A-89-90) When the brothers, O.S. and I.S., were in the Security office, Patterson learned that the third boy had been observed going through people's jackets in the food court. (Patterson Depo. at 64, A-90) Mall Security then detained the third suspect, later identified as Jayvon Moore ("Moore"). (Patterson Depo. at 65-66, A-91) O.S. and I.S. initially reported they did not know the third boy, but later stated that Moore was the one who took the cell phone. (Jiminez Depo. at 75, A-115) Moore, however, stated that it was the other two boys who had stolen the phone. (Jiminez Depo. at 67-68, 70-71, 75, A-113-115)

Also on December 16, Smith returned to the Mall, after receiving notice from dispatch that individuals were in custody in connection with the cell phone theft from the previous day. (Smith Depo. at 37-38, A-10) When Smith arrived at the Mall, she saw three black males being

4

detained. (Smith Depo. at 40, 42; A-10-11) Mall Security told her that the boys were all involved in the cell phone theft from the prior day. (Smith Depo. at 42-43; A-11) Mall Security further told Smith that the three boys were caught when they entered the Mall. (Smith Depo. at 60, A-15) Smith was handed a piece of paper with the names, addresses, and dates of birth for all three boys. (Smith Depo. at 44, A-11) All three boys were minors, and two of them were the brother plaintiffs O.S. and I.S. Patterson told Smith that O.S. and I.S. were detained for violation of the Mall code of conduct, and that they had been observed lifting up tarps and taking sugar packets on both December 15 and 16. (Patterson Depo. at 78-79, A-94)[3] Mall Security told the State Police upon arrival that these boys were not supposed to be in the Mall, as the Mall was closed at the pertinent time to everyone except walkers. (Jiminez Depo. at 84-86, A-117-118)

Smith spoke first to the male who was seated on a bench by himself, later identified as Moore. (Smith Depo. at 45-46, A-12) Smith found that Moore was in possession of a cell phone, which was the phone that had been reported stolen on the prior day. (Smith Depo. at 45, A-12) Moore first denied that he had stolen the phone, then admitted to stealing the phone, and then further stated that the other two boys in custody – later identified as O.S. and I.S. – were "in with him" on taking the phone. (Smith Depo. at 45, A-12) Moore said that he was friends with O.S. and I.S. and that they were acting as lookouts for him. (Smith Depo. at 55-56, A-14)[4]

---

[3]Patterson had learned from the Mall Security dispatcher that O.S. and I.S. had been observed on December 16 lifting up tarps in the Mall. (Patterson Depo. at 81, A-95)

[4]There is no genuine dispute that Moore told Smith that O.S. and I.S. were involved in the theft. Smith's testimony to this effect is not controverted; Moore was not deposed. The minor Plaintiffs' mother stated that the police told her that Moore said her sons were involved. While O.S. stated that he overheard part of Moore's interview and Moore did not – during that portion of the interview – identify O.S. and I.S. as his accomplices, this does not create a genuine dispute as to whether, at some point during the interview, Moore made the statement attributed to Moore

Smith testified that she believed Moore's statement to be credible and that she had probable cause to detain all three suspects. (Smith Depo. at 87-88, A-22) Smith was given a Mall Security DVD or CD that was said to contain the video of the three males being taken into custody by security on December 16, 2010. (Smith Depo. at 47, A-12)

Smith decided to take all three suspects into custody, and Shatley was dispatched to the Mall for the limited purpose of transporting the suspects back to Delaware State Police Troop #9 in Odessa. (Shatley Depo. at 18-19, A-44-45) Shatley may have been told that these persons were suspects in a cell phone theft. (Shatley Depo. at 22, A-48) The suspects would have been handcuffed and transported to the Troop, which is how all suspects – even minors – are transported. (Shatley Depo. at 22, A-48; *see also* Smith Depo. at 56, A-14) Smith transported at least one suspect, and Corporal Shatley transported O.S. and I.S. (Shatley Depo. at 26, A-52) Shatley had no involvement in the underlying theft investigation. (Smith Depo. at 52, A-13)

Once at Troop #9, O.S. and I.S. would have been placed on a bench, where, consistent with policy, they would have each had one hand handcuffed to the bench. (Shatley Depo. at 32-35, A-58-61) Adults and juveniles are detained in this fashion. (Shatley Depo. at 36-37, A-62-63)

At Troop #9, Smith made contact with the minor Plaintiffs' mother and, with her permission, interviewed O.S. (Smith Depo. at 65-68, A-17) O.S. denied any involvement in the cell phone theft or any contact with Moore. (Smith Depo. at 69-70, A-18) O.S. stated that he and his brother had just received new cell phones and that Moore was trying to steal their phones. (Smith Depo. at 69, A-18) Smith spoke again to Moore and came to believe Moore was lying

by Smith.

6

about some details. (Smith Depo. at 72, A-18) Smith advised the minor Plaintiffs' mother that O.S. and I.S. would be released, and that Smith would review the surveillance video from the Mall. (Smith Depo. at 73, A-19) The surveillance video from the Mall would not operate at the Troop. (Smith Depo. at 71, A-18) Smith told the minor Plaintiffs' mother that she may need to call her after the holidays if there were evidence on the videos implicating O.S. or I.S. (Smith Depo. at 73-74, A-19) When Smith eventually reviewed the December 15 and 16 videos, she found them inconclusive and did not charge O.S. and I.S. with theft. (Smith Depo. at 80, A-20) However, Smith did arrest Moore on the charge of theft. (Smith Depo. at 74-83, A-18-21)

## III.  LEGAL STANDARDS

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986). An assertion that a fact cannot be – or, alternatively, is – genuinely disputed must be supported either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(l)(A) & (B). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587 (internal quotation marks omitted). The Court will "draw all

7

reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586; *see also Podobnik v. U.S. Postal Service*, 409 F.3d 584, 594 (3d Cir. 2005) (party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). However, the "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" and a factual dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"). Thus, the "mere existence of a scintilla of evidence" in support of the non-moving party's position is insufficient to defeat a motion for summary judgment; there must be "evidence on which the jury could reasonably find" for the non-moving party. *Anderson*, 477 U.S. at 252.

8

## IV.    DISCUSSION

### A.    Unlawful Detention

Section 1983 of Title 42 of the United States Code offers private citizens a means to redress violations of federal law by state officials.  It provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *see also Moore v. Tartler*, 986 F.2d 682, 685 (3d Cir. 1993).  Section 1983 is not a source of substantive rights. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).  Rather, it is a means to redress violations of federal law by state actors. *See id.*

An unlawful detention claim brought pursuant to Section 1983 requires a plaintiff to establish: (1) a Fourth Amendment seizure (2) without probable cause. *See Banks v. Gallagher*, 686 F. Supp. 2d 499, 507 (M.D. Pa. 2009) (citing *Dowling v. City of Phila.*, 855 F.2d 136, 141 (3d Cir. 1988)).

### 1.    State Defendants – Shatley & Smith

In the Complaint, Plaintiffs allege that defendants Shatley and Smith are liable for the alleged unlawful detention of minor plaintiffs, O.S. and I.S., in violation of Section 1983.  (*See*

9

D.I. 35, Complaint, Count I) Plaintiffs insist there are material issues of fact precluding summary judgment, including a lack of "reasonable suspicion to pursue O.S. and I.S., let alone probable cause to arrest O.S. and I.S." (D.I. 101 at 1) Plaintiffs also allege that the State Defendants "ignored exculpatory evidence" and prolonged Plaintiffs' detention at the police station, again without probable cause. (*See* D.I. 35, Complaint, ¶¶ 55, 58)

The State Defendants assert, however, that they are entitled to judgment as a matter of law on Plaintiffs' unlawful detention claim because there was probable cause for the arrest of O.S. and I.S., and there was no violation of Plaintiffs' constitutional rights. (*See* D.I. 111 at 1-6) In particular, the State Defendants contend that Corporal Smith possessed probable cause or could reasonably believe that she had probable cause to arrest O.S. and I.S. (*See id.* at 9) Smith arrested the minor Plaintiffs based on the statement of alleged accomplice Moore, in addition to the suspicious conduct of O.S. and I.S. in the Mall on the day prior to and the day of the arrest. (*See id.*) As to Corporal Shatley, the State Defendants point out that his role was limited to transporting the two minor plaintiffs to the Troop. (*See id.* at 10) Shatley and Smith further argue that they are entitled to qualified immunity. (*See id.* at 9-10) Plaintiffs disagree.

In the Court's view, no reasonable juror presented with the record evidence could find that Shatley and Smith lacked probable cause to arrest O.S. and I.S.

> Probable cause to arrest exists where the facts and
> circumstances within the arresting officer's knowledge are
> sufficient in themselves to warrant a reasonable person to believe
> that an offense has been or is being committed. *Estate of Smith v.*
> *Marasco*, 318 F.3d 497, 514 (3d Cir. 2003). . . . A district court
> may conclude that probable cause exists as a matter of law if the
> evidence, viewed most favorably to the [party seeking a finding of
> probable cause], would not support a contrary factual finding. *Id.*
> at 788–89. The function of the court is to determine whether

10

> objective facts available to the police at the time of the arrest were
> sufficient to justify a reasonable belief that the plaintiff had
> committed the crime for which he was arrested. *Id.* at 789.

*Wooleyhan v. Cape Henlopen Sch. Dist.*, 2011 WL 1875710, at *9 (D. Del. May 17, 2011).

When Smith arrived at the Mall, Mall Security told her that all three males in custody had been involved in the cell phone theft.[5] Smith then spoke to one of the males, Moore, who had the stolen cell phone and admitted to stealing it, and then went on to state that O.S. and I.S. were "in with him" on the theft, specifically stating that they were his friends and acting as his lookouts. (*See* D.I. 96 at 10-11 (collecting cases finding probable cause present based on accomplice statements) At this point, Smith believed Moore was credible.  (*See* Smith Depo. at 45-46, 55-56, 87-88, A-12, -14, -22; *see also* Tr. at 42)  "If at the moment the arrest was made . . . the facts and circumstances within [the defendant's] knowledge and of which [she] had reasonably trustworthy information were sufficient to warrant a prudent [wo]man in believing that the plaintiff had violated the law, [then] probable cause is present." *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 789 (3d Cir. 2000) (internal quotation marks omitted); *see also id.* at 788 ("[A] district court may conclude that probable cause exists as a matter of law if the evidence, viewed most favorably to Plaintiff, reasonably would not support a contrary factual finding, and may enter summary judgment accordingly.") (internal quotation marks omitted).  In sum, the facts and circumstances within Smith's knowledge were sufficient to warrant a reasonable person to believe O.S. and I.S. had committed a crime.

The Court agrees with the State Defendants that, because Smith had probable cause for the arrest or detention of the minor Plaintiffs, and Smith cannot be liable for unlawful detention,

---

[5]This is part of what Smith knew, even if she did not rely on it.

it follows that Corporal Shatley – whose involvement consisted of transporting the minors from the Mall to State Police Troop #9 – also cannot be found liable.

Accordingly, the Court will grant the State Defendants' motion for summary judgment as to Plaintiffs' claims under Section 1983 for unlawful detention. *See generally Groman v. Twp. of Manalapan*, 47 F.3d 628, 635 (3d Cir. 1995) ("Summary judgment can be granted in an appropriate case on probable cause . . . .").[6]

### 2. Mall Defendants – Patterson & Jiminez

In Count I of the Complaint, Plaintiffs allege that the Mall Defendants Patterson and Jiminez are liable for the unlawful detention of the minor Plaintiffs, O.S. and I.S., again in violation of Section 1983. (*See* D.I. 35, Complaint, Count I)  Defendants Patterson and Jiminez moved for summary judgment on the grounds that, as private actors, and in the absence of any state action, they are immune from liability. (*See generally* D.I. 98; D.I. 99)  The Mall Defendants further argue that, even if they are viewed as state actors, they should be afforded the same protections as state officials.  Plaintiffs, in turn, contend that Defendants Jiminez and Patterson are state actors as they acted "in concert with" and as "joint participants" with Defendants Smith and Shatley, and that the record demonstrates material issues of fact precluding summary judgment. (*See generally* D.I. 35; D.I. 101; *see also, e.g.,* Tr. at 28)  In particular, Plaintiffs contend that "the combination of training, licensing, and the powers that [the Mall Defendants] exercise" makes the Mall Defendants state actors, an opinion shared by Plaintiffs' expert. (Tr. at 27; *see also* D.I. 102 at 12 n.10)

---

[6]Plaintiffs argue there was substantial evidence of witness unreliability and independent exculpatory evidence. But probable cause can – and here, did – exist at the moment of arrest even if not all evidence points in the direction of guilt, and even if an arrested defendant is later determined to be not guilty (or even not charged).

Here, the record evidence shows that while the Mall Defendants were licensed private security officers, and used training materials prepared by the Delaware State Police, they were not trained by state actors, nor do they have the powers of public law enforcement officers. (*See, e.g.*, Tr. at 9, 11, 45) Additionally, the Delaware shopkeeper statute provided the Mall Defendants some authority to detain, given the evidence the minor Plaintiffs were involved in theft of sugar packets and violated Mall policy prohibiting the presence of unaccompanied minors prior to store openings. (*See id.* at 8-11; *see also* D.I. 110 at 6-7; Patterson Depo. at 48, 53, 78-79, A-86, A-88, A-94) Finally, just as Smith had probable cause to arrest the minor Plaintiffs, so did the Mall Defendants have probable cause to believe the minor Plaintiffs violated mall policy and/or the law.

## B.     Excessive Force[7] – Shatley

Plaintiffs allege that State Defendant Shatley used excessive force on minors O.S. and I.S. by handcuffing them to a wall at the Delaware State Police Troop for two hours. (*See* D.I. 85 ¶ 62; D.I. 101 at 1) Defendant Shatley contends he is entitled to summary judgment as he was following policy, which requires individuals in custody and seated on the bench at the police troop to have one hand cuffed to a wall for security purposes. (*See* Shatley Depo. at 34-37, A-60-63; *see also* Smith Depo. at 59-60, A-15) Shatley adds that Plaintiffs do not claim that the handcuffing caused any physical injury. (*See, e.g.,* D.I. 96 at 13; Tr. at 21)

"A cause of action exists under § 1983 when a law enforcement officer uses force so excessive that it violates the Fourth and Fourteenth Amendments to the United States

---

[7]As the State Defendants correctly point out (*see* D.I. 111 at 7; Tr. at 14), and as Plaintiffs have conceded (*see* Tr. at 41), although Plaintiffs' briefing contained language asserting an excessive force claim against Smith (*see* D.I. 101 at 1, 16-17), no such claim against Smith is alleged in the Complaint, and no such claim against her is being pursued.

Constitution." *Groman*, 47 F.3d at 633-34. "Summary judgment is appropriate if, as a matter of law, the evidence would not support a reasonable jury finding that the police officer's actions were objectively unreasonable." *Id.* at 634; *see also Graham v. Connor*, 490 U.S. 386, 394, 397 (1989). The objective reasonableness test "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396.

The Court agrees with Defendant Shatley that, under the totality of circumstances, the amount of force used was not objectively unreasonable and, therefore, was not excessive. The minor Plaintiffs were handcuffed consistent with policy, and not due to their age, sex, race, or any other characteristic. (*See* Tr. at 39-40) The record is devoid of evidence that Shatley, who merely transported the two suspects at the direction of another officer, acted to violate the minor Plaintiffs' constitutional rights. Although the minor Plaintiffs were not accused of a violent crime and were not actively resisting arrest or attempting to flee, the restraint imposed was not objectively unreasonable.

## C.     False Imprisonment – Patterson & Jiminez

Plaintiffs' Complaint also alleges that the Mall Defendants Patterson and Jiminez are liable for false imprisonment as a result of their detention of the minor Plaintiffs, O.S. and I.S., in the Mall security office. (*See* D.I. 35, Complaint, Count IV) Defendants Patterson and Jiminez counter that they had probable cause to believe that crimes were committed and had the right to detain the minor Plaintiffs for the purpose of calling the police, which is what they did. (*See* D.I. 98; D.I. 99)

"False imprisonment occurs when one person unlawfully restrains the physical liberty of

14

another and is a tort based upon the unlawful detention of one person by another." *Brodzki v. Fox Broadcasting Co.*, 868 F. Supp. 2d 386, 389 n.6 (D. Del. 2012) (citing *Shaffer v. Davis*, 1990 WL 81892, at *2 (Del. Super. Ct. June 12, 1990)). "An action for false imprisonment will not lie where the arrest was lawful, i.e. based on probable cause." *Wooleyhan v. Cape Henlopen School Dist.*, 2011 WL 1875710, at *12 (D. Del. May 17, 2011) (citing *Boulden v. Turner*, 2007 WL 3378662, at *4 (Del. Super. Ct. Apr. 12, 2007)).

It follows from the Court's conclusions with respect to probable cause and unlawful detention that summary judgment for the Mall Defendants on the false imprisonment count is appropriate as well.[8]

V.     **CONCLUSION**

An appropriate Order follows.

---

[8]In their reply briefs, the State Defendants and the Mall Defendants request that the Court strike Plaintiffs' Exhibit A, and the Mall Defendants further request that the Court also strike pages 36-83 of Plaintiffs' Appendix. (*See* D.I. 101; D.I. 102; D.I. 103, 104 & 105 at P36-83; D.I. 107; D.I. 109; D.I. 110 at 1-2; D.I. 111 at 6; Tr. at 4-5, 12, 24-26) These materials consist of the December 15 and 16, 2010 Surveillance Videos and a Security Guard 16 Hour Curriculum. Defendants' request is denied.

15